[Crim. No. 7094. Second Dist., Div. Three. Jan. 6, 1961.]

THE PEOPLE, Respondent, v. GORDON DALE PETERSEN, Appellant.

Morris Lavine for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

SHINN, P. J.—By information Gordon Dale Petersen and Vivian Thornton were accused of a violation of section 288a of the Penal Code. Petersen will be referred to as defendant. Trial by jury was waived and the case was tried upon the evidence received at the preliminary and additional evidence at the trial. Defendant was convicted, was placed on probation on condition that he serve a sentence in the county jail. He appeals from the order granting him probation as from a judgment and from the order denying his motion for new trial.

Police Officers Wesley, Manley, Villalba and Green gave testimony for the People. Of these only Officer Wesley testified at the preliminary. Three officers testified to the following facts. At about 8 p. m. they saw defendant take defendant Thornton into his car, saw him drive away a short distance and around a corner and park his car with the lights out. The officers followed in a car and approached defendant's car on foot. Officer Wesley testified at the preliminary and Officer Manley testified at the trial to having witnessed the actual commission of the act charged. Officer Villalba stood by, although he participated in a discussion with Thornton. The officers learned that defendant was a police officer assigned to the Hollywood substation. They made no arrest at the time, but reported to their superiors. Ten days later, on May 13, 1959, after the officers and the defendants had been interviewed, Petersen was suspended as a police officer and the two defendants were placed under arrest.

The principal contention of the defendant is that the court erred in denying his motion for a new trial made

upon the ground of newly discovered evidence and presented to the court by affidavits. The facts relied upon as newly discovered came to the attention of the defendant in the following manner. The trial was held October 16. On November 17, defendant made a motion for inspection of all statements and reports of statements of Officer Manley and all reports made by Sergeant Green and by Lieutenant Collins and Captain Powers of the Los Angeles Police Department. The motion was granted. The People produced the following: (1) a report of Officers Powers and Collins which purported to be a résumé of ''information relayed through chain of command'' and not based upon any interview with Manley; (2) a report dated May 13, 1959, of Officers Green and Annis, being a résumé of interviews with the three officers and the two defendants; (3) a transcription of an interview with Manley November 2, 1959, by Green and Annis, in question and answer form.

Upon the oral argument the point was made that defendant had been denied due process for the reason that the deputy district attorney suppressed facts which, if known to defendant, would have aided in his defense. The contention is devoid of merit. The claim is that the deputy district attorney had all the above mentioned reports in his possession and knew or should have known that there was a material discrepancy between the Green and Annis report of what Manley had stated in the interview and the testimony which Manley had given at the trial concerning what he had seen on the night in question. Attached to the Green and Annis report was the transcription of their interview with Manley. It is clear from a reading of the report and the transcript that while there was some difference between the summary of Officers Green and Annis of what Manley had said and what he actually said in the reported interview respecting what he had seen, there was in fact no substantial variation. The two were readily reconcilable and both were clearly consistent with the testimony that Manley gave in the trial.

We could allow the matter to rest here, but we think that in view of the accusation of the suppression of evidence we should give the matter further consideration. Mr. Ritzi, the deputy district attorney, made an affidavit on the motion for new trial in which he stated that shortly before the trial he had the above mentioned records in his possession and that he had several conversations with Mr. Oppen, one of defendant's

attorneys, concerning statements that had been made by the witnesses; he stated that he told Mr. Oppen that the latter was at liberty to examine any of the statements of witnesses which were in his (Ritzi's) possession, and that Oppen replied he was interested only in statements made by Petersen and Thornton; these were shown to Mr. Oppen. The records show that Mr. Oppen had previously appeared before the Police Board of Rights in a hearing involving Petersen. He had stated that he was one of Petersen's attorneys and that he was a retired police officer. Undoubtedly he knew that Officers Wesley and Manley had made reports to their superiors which had led to the arrest of Petersen and Thornton and the proceedings before the Board against Petersen. Mr. Oppen filed no affidavit. Not only does it appear without contradiction that Mr. Oppen would have been given access to all the reports in the possession of Mr. Ritzi if he had made a request for them, but Mr. Ritzi had nothing to conceal, nor any reason to withhold any of the reports. If he had made a comparison of everything that was in the reports with the testimony given by Manley in the trial, he would have realized that no difference existed in substance or meaning. The statements of Manley, as transcribed, of what he had seen were so complete and explicit as to remove any doubt that he had seen the act committed. The contention that there was concealment by the People of material facts utterly fails.

It appeared at the time of the hearing of the motion for new trial that Green had been requested to make an affidavit with respect to the statements of Manley as contained in the Green-Annis report, and that he had refused to make an affidavit. Defendant requested that Green be placed on the stand to be interrogated with respect to Manley's statements. The request was denied and the ruling is assigned as error. It must be presumed that the court believed that Green's interpretation of Manley's transcribed statements was not inconsistent with those statements nor inconsistent with the testimony Manley had given in the trial. Even if the court had believed that Manley had made statements to Green and Annis which conflicted in some respects with his testimony at the trial and tended to impeach him, the refusal to require that Green testify on the hearing on the motion was clearly within the court's discretion. (*Pari-Mutuel Employees' Guild* v. *Los Angeles Turf Club, Inc.*, 169 Cal.App. 2d 571, 581-582 [337 P.2d 575]; *People* v. *Tucker*, 117 Cal.

229, 230-231 [49 P. 134]; *People* v. *Ferguson*, 124 Cal.App. 221, 227-230 [12 P.2d 158, 960].)

 The police took from Vivian Thornton a statement in which she admitted that she and Petersen had committed the act charged. The statement was introduced in evidence against her alone. She was called to the stand by defendant but refused to testify. Defendant says "The court erred in permitting Miss Thornton to be called to the witness stand. She could only be called at her own request, but not otherwise." This argument is pointless. Although as a codefendant Miss Thornton was not to be deemed a competent witness because she did not offer herself as such (Pen. Code, § 1323.5), it was appellant who sought to make her his witness and he cannot complain of his own action.

 Vivian Thornton also made an affidavit at the request of defendant's attorney in which she admitted having committed the offense charged at the time and place described by the officers but denied that defendant was the person who was with her. Defendant offered in evidence this sworn statement and it was refused admission. The statement was not admissible; it was hearsay and since Miss Thornton had not testified the statement was not admissible by way of impeachment. Defendant offered to prove that if Miss Thornton were called to the stand she would testify to the truth of the statement she had made in his behalf and the People offered to prove by her testimony that the statements she had made which implicated defendant were true. Both offers were properly denied.

Petersen testified at the trial. A transcribed statement made by him was introduced in evidence. There was also introduced the testimony of Deputy Police Chief Brown respecting a conversation he had with Petersen. Petersen's evidence at the trial as well as the statements he had made furnished strong corroboration of the testimony of Officers Wesley and Manley. Defendant admitted the apprehension of himself and a woman as described by the officers, although he stated that the woman was not Vivian Thornton, but some one he knew to be a prostitute, but could not name. In brief, his statements and his testimony were that the act charged was not committed but that this was due to the interruption by Officers Wesley and Manley.

 The final contention of defendant that the testimony of the officers was inherently improbable was made to the trial

court and rejected, and it does not present a question of law on the appeal.

The judgment and the order denying the motion for new trial are affirmed.

Vallée, J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 1, 1961.