Filed 3/20/24

**CERTIFIED FOR PARTIAL PUBLICATION***

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| Conservatorship of the Person of K.Y. | |
| PUBLIC GUARDIAN OF CONTRA COSTA COUNTY,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>K.Y.,<br><br>    Objector and Appellant. | A166825<br><br>(Contra Costa County Super. Ct. No. MSP22-00966) |

K.Y. appeals from an order granting the petition of the Public Guardian of Contra Costa County (Public Guardian) to establish a conservatorship for a one-year period under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) (LPS Act).[1]  She challenges the sufficiency of the evidence in support of the jury's finding that she is gravely disabled and the court's order permitting the Public Guardian to make medical decisions on her behalf.  She also contends that the trial court erred in admitting at trial hearsay statements contained within psychiatric records.  We dismiss the appeal as moot because the order appealed from expired even before briefing was complete and we find that no exception to the mootness doctrine applies.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and II.

    [1] Undesignated statutory references are to the Welfare and Institutions Code.

1

Because it appears that the appeal likely would not have become moot had the parties not obtained several extensions of time in the briefing schedule, we also take the opportunity in the published portion of the opinion to address considerations for the expeditious presentation of appeals in conservatorship and other similar cases that involve an inherent risk of mootness.

## BACKGROUND

On December 9, 2022, following a trial at which a jury found K.Y. to be gravely disabled within the meaning of then section 5008, subdivision (h)(1)(A), the trial court appointed the Public Guardian as conservator of K.Y's person, placed her in a board and care facility, and empowered the Public Guardian to make medical decisions on her behalf. [2]

K.Y. timely filed a notice of appeal on December 13, 2022. Appellate Counsel was appointed on January 24, 2023, and the record on appeal was filed in this court on March 9. K.Y. sought and received three extensions of time for a total 94 days, before filing her opening brief on September 7. After receiving two extensions of time for a total of 28 days, the Public Guardian's brief was filed on November 30, less than two weeks before the expiration of

---

[2] At the time of K.Y.'s trial, section 5008, subdivision (h)(1)(A) defined gravely disabled as "[a] condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter." (Stats.2017, ch. 246, § 3, eff. Jan. 1, 2018.) Effective January 1, 2024, this provision was amended and currently defines gravely disabled as "[a] condition in which a person, as a result of a mental health disorder, a severe substance use disorder, or a co-occurring mental health disorder and a severe substance use disorder, is unable to provide for their basic personal needs for food, clothing, shelter, personal safety, or necessary medical care." Section 5357, subdivision (d) at all times authorized the court to impose a "disability" that restricts the conservatee's "right to refuse or consent to treatment related specifically to the conservatee's being gravely disabled."

the conservatorship order. On January 19, 2024, after receiving an additional 30-day extension, K.Y.'s reply brief was filed.

None of the parties' briefs addressed the possible mootness of the appeal. Accordingly, on February 15, 2024, we requested supplemental briefing on whether the appeal had been rendered moot by the expiration of the order, and if so, whether there is any applicable exception to the mootness doctrine that warrants the court's exercise of discretion to consider one or more of the issues raised in the opening brief. In response, the Public Guardian asked the court to dismiss the appeal as moot. The Public Guardian advised the court that it had filed a petition to renew the conservatorship in November 2023 and that K.Y. had accepted reappointment of the conservatorship for six months, with a reservation of rights. The current conservatorship is set for review on June 5, 2024.[3] K.Y. disagrees that the appeal is moot and argues that even if it is, the court should exercise its discretion to address the merits of the appeal based on the public importance of the issues raised, their likely continuing impact on her and others, and the potential difficulty of resolving such an appeal before the expiration of a one-year conservatorship.

## DISCUSSION

An LPS conservatorship appointment or reappointment order lasts for one year only, by operation of law. (§ 5361.) The order under review expired on December 9, 2023. At that point, the appeal became moot. (*Conservatorship of J.Y.* (2020) 49 Cal.App.5th 220, 223, 225.) K.Y.'s argument that the appeal "is not moot because 'collateral consequences

---

[3] The Public Guardian's request that this court take judicial notice of Superior Court minute orders dated December 6, 2023, January 10, 2024, January 24, 2024, and January 29, 2024, is granted.

3

remain even after the conservatorship has been terminated' " is not persuasive under the circumstances here. (See *Conservatorship of Jones* (1989) 208 Cal.App.3d 292, 298 [identifying legal questions arising from the period of incapacity and potential social stigma as possible collateral consequences remaining after the termination of a conservatorship].) Because K.Y. has accepted reappointment of the conservatorship, there is little likelihood that she will suffer collateral consequences as a result of the finding of grave disability on this specific petition.

As K.Y. notes, we have inherent discretion to resolve an appeal on the merits where "the issues in [the] case are of public interest, will continue to evade review, and are likely to recur, both in general and as to the petitioner specifically." (*Baber v. Superior Ct.* (1980) 113 Cal.App.3d 955, 959; *Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 960 [exercising discretion to consider moot appeal where "the issue presented . . . is capable of recurring, but evading review, and involves a matter of general public interest"].) As discussed below, however, none of these reasons apply to the present appeal.

## I. Issues of Broad Public Interest

K.Y. contends that each of the arguments raised on appeal are issues of public importance likely to recur in conservatorship proceedings involving both her and others. Initially, she argues that her challenge to the sufficiency of the evidence in support of the jury's finding of grave disability raises the important question of "whether a homeless camp constitutes 'shelter' within the meaning of the [LPS Act] grave disability standard, as there was no dispute as to whether [she] could provide for her own food or clothing." We are not persuaded that K.Y.'s appeal turns on whether a homeless encampment can qualify as shelter. Contrary to her suggestion,

4

although there was some evidence that she was able to locate food when not hospitalized, the Public Guardian did not concede that she could provide for her own food and clothing. The Public Guardian relied on the expert's testimony regarding K.Y.'s behavior and repeated hospitalization over the preceding year, her lack of insight into her mental illness, and her inability or refusal to take her medication without oversight, to argue that her mental disorder rendered her unable to provide for food, clothing, and shelter. The relevant question, then, is whether, taking the record as a whole, there is substantial evidence to support the jury's finding. (See *Conservatorship of S.A.* (2020) 57 Cal.App.5th 48, 54 ["We review the whole record in favor of the judgment below to determine whether there was substantial evidence [appellant] was gravely disabled beyond a reasonable doubt"].) This fact-intensive inquiry into her individual mental health status does not meet the standards for the public-importance exception.

The sufficiency of the evidence in support of the court's medication disability order is also not a matter of wide public concern. K.Y. characterizes the important public issue as "whether a medication disability may be imposed where the evidence shows that the conservatee is medication compliant." She acknowledges, however, that the relevant question on appeal is "whether substantial evidence exists from which a reasonable trier of fact could have found by clear and convincing proof that appellant lacked the capacity to give or withhold informed consent," and that "the capacity to provide informed consent does not turn upon medication compliance." While evidence of K.Y.'s past and current medication compliance is relevant to the analysis, again the public-importance exception does not apply to a fact-intensive inquiry into her individual capacity to consent to treatment.

5

Finally, K.Y. concedes that whether the court prejudicially erred by admitting hearsay contained within psychiatric records under the business records exception is "a fact-specific inquiry that turns largely upon the specific statements at issue in this case," but argues that "the frequency with which this issue is litigated shows that it is an issue of great public importance." It is well established, however, that medical records are admissible in conservatorship proceedings under the business records exception to the hearsay rule to prove "the acts, conditions, and events recorded therein." (*Conservatorship of S.A.* (2018) 25 Cal.App.5th 438, 447; see also *People v. Beeler* (1995) 9 Cal. 4th 953, 980–981 ["[T]o be admissible under the business records exception, the evidence '. . . must be a record of an act, condition, or event; a conclusion is neither an act, condition or event' "]; *People v. Reyes* (1974) 12 Cal.3d 486, 503 [psychiatric diagnosis is an opinion, not an act, condition or event within the meaning of the business records exception].) We disagree with K.Y.'s contention that the application of existing authority to the specific terms at issue in her records "has the capacity to affect a great number of future cases and shape how second-layer hearsay is treated within the LPS Act body of law generally."

## II. Issues Likely to Recur but Evade Review

K.Y. also contends that we should consider each of her arguments because they are likely to recur in future conservatorship proceedings in which she is a party, and that, due to the short duration of the order appointing the Public Guardian and the normal time required to obtain relief on appeal, the errors would tend to evade review. We disagree. Each subsequent petition for reappointment of a conservator under the LPS Act is resolved independently of any conservatorship that preceded it. (See § 5361; *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 543 ["focus [is] primarily on

6

the conservatee's current needs and progress, rather than on a retrospective consideration of conditions that may no longer exist"].)  The sufficiency of the evidence in support of the jury's finding under the prior version of the statute and the trial court's finding as to her ability to consent to medical treatment at the time of trial are of no relevance to a later proceeding, which will necessarily rely on different and likely more recent evidence as to her mental condition.  While it is arguably possible that some of the medical records introduced in the underlying trial might be introduced in future proceedings, the length of time between the creation of the records (between September 2021 and June 2022) and the date of any future trial makes it less likely that the same documents will be relied on again.  Moreover, for the reasons we discuss in the next section, we decline to assume that the matter would evade review.

## III.  Appeals in Cases Involving Inherent Risk of Mootness

Dismissal of appeals for mootness is not uncommon in LPS conservatorship cases, as in other cases that involve challenges to one-year civil commitment orders.  (See *Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1094 & fn. 2–1096; *People v. McCray* (2023) 98 Cal.App.5th 260, 267 [appeal of commitment order for offender with mental health disorder].)  We recognize that there can be unavoidable delays, such as with appointment of counsel or preparation of the record, that render it exceedingly difficult, if not impossible, for the parties to brief, and the court to adjudicate, an appeal before the order expires or a new commitment order is sought and obtained. At the same time, there are doubtless cases in which mootness can be avoided by taking advantage of procedures available for expedition.  (See *Conservatorship of Forsythe* (1987) 192 Cal.App.3d 1406, 1409 [adopting policy to entertain such cases on "expedited appeal"]; *McCray*, at p. 269

7

[noting that "no effort was made to seek calendar preference in this appeal due to imminent mootness" and that the appellant "would be well advised to proceed with greater urgency and seek calendar preference" to avoid mootness in a subsequent appeal]; California Rules of Court rule 8.240 [motion for calendar preference].)

In this case, the record was filed and counsel was appointed in a timely manner. Between the parties there were six extensions of time, most sought by K.Y., which extended the briefing schedule by approximately five months. Without this additional time in preparing the briefs, the appeal could likely have been decided before the expiration of the commitment order even without a motion for calendar preference. Our intent here is not to assign blame; we acknowledge that "[f]or a variety of legitimate reasons, counsel may not always be able to prepare briefs or other documents within the time specified in the rules of court" and that "[i]f good cause is shown, the court must extend the time." (Cal. Rules of Court rule 8.63, subd. (a)(3).) Nonetheless, when requesting an extension of time, counsel should be mindful of the expiration date of the conservatorship order and should inform the court of that date so that good cause may be evaluated properly.[4] (See

---

[4] The current Judicial Council forms to request an extension of time do not call for this information. California Rules of Court rule 8.480 provides generally that criminal rules 8.304–8.368 and 8.508 govern appeals from orders establishing conservatorships under Welfare and Institutions Code section 5350 et seq. Here, K.Y.'s counsel submitted her requests for an extension of time on Judicial Council form CR-126, which is for use in criminal cases. That form, however, does not ask about calendar preference/priority, nor does it ask about the date on which any challenged conservatorship or civil commitment order expires. The current version of the civil form, APP-006, does ask the applicant to indicate whether the "appeal is eligible for, or has been granted, calendar preference/priority," but does not expressly address conservatorships or civil commitment orders. The

8

*id.*, subd. (a) [the good cause requirement is intended to balance the following competing policies: "(1) The time limits prescribed by these rules should generally be met to ensure expeditious conduct of appellate business and public confidence in the efficient administration of appellate justice. [¶] (2) The effective assistance of counsel to which a party is entitled includes adequate time for counsel to prepare briefs or other documents that fully advance the party's interests. Adequate time also allows the preparation of accurate, clear, concise, and complete submissions that assist the courts"].) Counsel (whether for the appellant or the respondent) may wish to address whether the requested extension would significantly compromise the court's ability to adjudicate the appeal before the expiration of the civil commitment order if no exception to mootness applies, or whether the appellant contends that the appeal is one that warrants the court's discretionary review if it is likely to be moot before a decision can be rendered.

## DISPOSITION

The appeal is dismissed as moot.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SMILEY, J. *

---

Judicial Council may wish to clarify which form should be used for conservatorship and other civil commitment cases, and prompt parties to indicate the date on which the challenged order expires.

* Judge of the Superior Court of California, Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Honorable Julia Campins |
| Counsel for Objector and Appellant: | Matthew J. Watts, under appointment by the Court of Appeal |
| Counsel for Petitioner and Respondent: | Thomas L. Geiger, County Counsel, Steven P. Rettig, Assistant County Counsel, Patricia Lowe, Deputy County Counsel |